USDC SCAN INDEX SHEET

















RYC   9/8/04   10:12

3:04-CV-01147   PURE BIOSCIENCE V. FALKEN INDUST LTD

*20*

*OPPM.*

1  Joel S. Seidel, SB #175275
   10325 Aldea Avenue
2  Granada Hills, CA 91344
   Tel: (818) 832-7850
3  Fax: (818) 832-7889

4  Attorney for Respondent Falken Industries

5

6

7

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11 PURE BIOSCIENCE,                        )  CASE NO. 04 cv 1147 L (NLS)
   f/k/a Innovative Medical Services,      )
12                                         )  **FALKEN'S MEMORANDUM IN**
                                           )  **OPPOSITION TO PURE BIOSCIENCE'S**
13              Petitioner,                 )  **MOTION TO COMPEL ARBITRATION**
                                           )
14 vs.                                      )  Date: October 18, 2004
                                           )  Time: 10:30 a.m.
15 FALKEN INDUSTRIES, LTD.,                )  Dept. 14
   a New Jersey corporation,               )  Judge Lorenz
16                                         )
                Respondent.                )
17

18

19

20

21

22

23

24

25

26

27

28

FILED
SEP - 7 2004
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY

"VIA FAX"

## Table of Contents

Introduction ..................................................................................................................... 2

Statement of Facts ........................................................................................................... 3

Argument ......................................................................................................................... 5

    I.    FALKEN DID NOT ASSUME THE OBLIGATIONS OF THE
            CORE SETTLEMENT AGREEMENT AS IT ONLY ACCEPTED
            A PARTIAL ASSIGNMENT OF ITS BENEFITS, IT HAS NOT
            RECEIVED ANY OF THOSE BENEFITS, AND THE
            ASSIGNMENT WAS RESCINDED ..................................................................... 5

    II.   AS FALKEN HAS NOT ATTEMPTED TO ENFORCE ANY
            RIGHTS UNDER THE CORE SETTLEMENT AGREEMENT,
            IT IS NOT ESTOPPED BY EITHER THE INTERTWINING
            CLAIMS OR EXPLOITATION OF BENEFITS THEORIES OF
            ESTOPPEL FROM DENYING THE ARBITRATION
            AGREEMENT ..................................................................................................... 7

    III.  FALKEN NEVER WAIVED ITS RIGHT TO HAVE A COURT
            DETERMINE WHETHER IT WAS SUBJECT TO THE
            ARBITRATION AGREEMENT TO WHICH IT WAS NOT A
            PARTY ............................................................................................................... 11

Conclusion ...................................................................................................................... 18

i

## Table of Authorities

American Builder's Ass'n. v. Au-Yang,
226 Cal. App. 3d 170, 276 Cal. Rptr. 262 (2d Dist. 1990) ............................................. 1, 16

Bridas S.A.P.I.C. v. Government of Turkmenistan,
345 F.3d 347 (5th Cir. 2003) ............................................................................. 9

Connally v. Georgia,
429 U.S. 245 (1977) ...................................................................................... 15

Deloitte Noraudit A/S v. Deloitte Haskins & Sells,
9 F.3d 1060 (2d Cir. 1993) ............................................................................. 8

Ficek v. Southern P. Co.,
388 F.2d 655 (9th Cir. 1964) .......................................................................... 12

First Options of Chicago, Inc. v. Kaplan,
514 U.S. 938 (1995) ................................................................................. 1, 13

Fortune, Alsweet & Eldridge, Inc. v. Daniel,
724 F.2d 1355 (9th Cir. 1983) ........................................................................ 12

Francesco's B, Inc. v. Hotel & Rest. Emp. & Bartenders Union,
659 F.2d 1383 (9th Cir. 1981) ........................................................................ 12

i

George Day Constr. Co. v. United Bro. of Carpenters,

722 F.2d 1471 (9th Cir. 1984) ................................................................................. 12


Grigson v. Creative Artists Agency,

210 F.3d 524 (5th Cir. 2000) ..................................................................................... 9


International Bro. of Teamsters v. Washington Employers, Inc.,

557 F.2d 1345 (9th Cir. 1977) ................................................................................ 12


John Wiley & Sons, Inc. v. Livingston,

376 U.S. 543 (1964) ................................................................................................ 13


Kustom Kraft Homes v. Leivenstein,

14 Cal. App. 3d 805, 92 Cal. Rptr. 650 (2d Dist. 1971) ......................................... 11


Lachmar v. Trunkline Lng Co.,

753 F.2d 8 (2d Cir. 1985) .......................................................................................... 6


Lovret v. Seyfarth,

22 Cal. App. 3d 841, 101 Cal. Rptr. 143 (2d Dist. 1972) ...................................... 12


McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.,

741 F.2d 342 (11th Cir. 1984) .................................................................................. 8


O'Malley v. Petroleum Maintenance Co.,

48 Cal. 2d 107, 308 P.2d 9 (1957) .......................................................................... 11

ii

Recorded Picture Co. v. Nelson Entertainment. Inc.,

53 Cal. App. 4th 350, 612 Cal. Rptr. 2d 742 (2d Dist. 1997) ................................................. 5


Thomson-CSF, S.A. v. American Arbitration Ass'n,

64 F.3d 773 (2d Cir. 1995) ....................................................................................... 8


Turney v. Ohio,

273 U.S. 510, 523, 531 (1927) .................................................................................. 15


United States v. Panhandle Eastern Corp.,

672 F. Supp. 149 (D. Del. 1987) .............................................................................. 1


United Steelworkers of America v. Warrior & Gulf Nav. Co.,

363 U.S. 574 (1960) ............................................................................................... 13


Ward v. Village of Monroeville,

409 U.S. 57 (1972) ................................................................................................ 15


Wolsey, Ltd. v. Foodmaker. Inc.,

144 F.3d 1205 (9th Cir. 1998) ................................................................................. 13

iii

1   Joel S. Seidel, SB #175275
    10325 Aldea Avenue
2   Granada Hills, CA 91344
    Tel: (818) 832-7850
3   Fax: (818) 832-7889

4   Attorney for Respondent Falken Industries

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  PURE BIOSCIENCE,                    )   CASE NO. 04 cv 1147 L (NLS)
    f/k/a Innovative Medical Services,  )
12                                       )   **FALKEN'S MEMORANDUM IN**
                                         )   **OPPOSITION TO PURE BIOSCIENCE'S**
13                         Petitioner,   )   **MOTION TO COMPEL ARBITRATION**
                                         )
14  vs.                                  )   Date:  October 18, 2004
                                         )   Time:  10:30 a.m.
15  FALKEN INDUSTRIES, LTD.,             )   Dept.  14
    a New Jersey corporation,            )   Judge Lorenz
16                                       )
                           Respondent.   )
17

18

19

20

21

22

23

24

25

26

27

28                              1

1    Respondent, Falken Industries. Ltd., by its attorney, submits this memorandum in opposition

2    to Petitioner Pure Bioscience's Motion For Issuance Of An Order Compelling Arbitration.

3                                            **Introduction**

4            Courts are uniform in holding that no party can be compelled to arbitrate absent their

5    agreement, either express or implied, to do so. See, e.g., American Builder's Ass'n. v. Au-Yang.

6    226 Cal. App. 3d 170, 276 Cal. Rptr. 262 (2d Dist. 1990) ("policy favoring arbitration cannot

7    displace the necessity for a voluntary agreement to arbitrate"); see also United States v. Panhandle

8    Eastern Corp., 672 F. Supp. 149, 153 (D. Del. 1987) ("a court may not force a party to arbitrate

9    when ordinary contract principles indicate that it has not agreed to do so"). Although Falken did not

10   enter any arbitration agreement with Pure Bioscience. Pure Bioscience nonetheless seeks to compel

11   Falken to arbitrate, claiming that Falken is subject to an arbitration agreement that Pure Bioscience

12   has with a third party, NVID, because Falken allegedly assumed the obligations of the agreement,

13   including the agreement to arbitrate, when NVID assigned some of its rights under the agreement to

14   Falken. (Pure Mem. at 20-22.) In addition, Pure Bioscience contends that Falken is estopped from

15   denying the arbitration agreement under an "interdependent and concerted misconduct theory"

16   because it "boasted" that it had the right to manufacture products under the Axenohl patent and

17   under an acceptance of benefits theory because it asserted its own (unidentified) claims under the

18   agreement. (Pure Mem. at 22-23.) Finally, Pure Bioscience argues that Falken waived its right to

19   have a court decide whether it is subject to the arbitration agreement when it specially appeared in

20   the arbitration to object to jurisdiction and briefed the issue.

21           As set forth below, however, a party may not be held to have impliedly assumed the

22   obligations of an agreement unless it has received full performance under the agreement, which

23   Falken has not. Moreover, a nonsignatory defendant such as Falken is not estopped from asserting

24   its status as a nonsignatory to avoid arbitration when it has not attempted to enforce any provisions

25   of the agreement by bringing its own claims. Finally, according to the U.S. Supreme Court in First

26   Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995). a party who objects to jurisdiction and

27   briefs the issue to the arbitrator, but does not thereafter agree to submit the claim on the merits to the

28                                                  2

1   arbitrator by proceedings to hearing has not waived his right to have a court determine whether he is

2   subject to the arbitration agreement.

### Statement of Facts

4       1.      Falken entered a special appearance in the arbitration for the limited purpose of

5   objecting to the AAA's jurisdiction over Falken as Falken was not a party to the Core Settlement

6   Agreement under which Pure Bioscience sought arbitration. **(Pure Exhibit B at 1 and Pure**

7   **Exhibit G at 2.)** At the arbitrator's request, Falken submitted a brief objecting to jurisdiction.

8   **(Pure Exhibit B at 1.)**

9       2.      After briefing and argument, the arbitrator submitted to the AAA on January 28,

10  2004, an opinion and order finding that Falken was subject to the arbitration clause. **(Pure Exhibit**

11  **G.)**

12      3.      The Core Settlement Agreement provides that California law controls **(Pure Exhibit**

13  **A(1), ¶ 18.7)** and at the oral argument, Falken cited the arbitrator to California law providing that the

14  question of whether a nonsignatory is a party to an arbitration agreement is one for a trial court in the

15  first instance and may not be determined by an arbitrator. **(Rovell Declaration, attached as Exhibit**

16  **1, ¶ 3.)**

17      4.      The opinion did not address Falken's authority providing that the issue of whether a

18  party is subject to an arbitration clause is one for the courts.

19      5.      The arbitrator based his holding on an Omnibus Assignment **(Exhibit 2)**, by which

20  NVID assigned to Falken some of its rights under the Core Settlement Agreement. Citing the

21  provision of the Omnibus Assignment that provided for the assignment of monies due and causes of

22  action arising under the Core Settlement Agreement, he found that "all of the benefits of

23  consequence" of the Core Settlement Agreement had been assigned to Falken and accordingly held

24  that "the Omnibus Assignment is a full and complete assignment of the Core Settlement Agreement

25  from NVID to Falken." **(Pure Exhibit G at 3.)**

26      6.      Falken had cited authority for the proposition that before a party may be found to

27  have impliedly accepted all the burdens of an agreement, which would include an arbitration clause,

28                            3

1   "all the benefits of a full performance [must have] inured to him."   **(See Rovell Declaration,**
2   **Exhibit 1, ¶ 4.)**

3       7.    Although no benefits had or have yet inured to Falken as it had not yet received any
4   royalties (see **Rovell Declaration, Exhibit 1, ¶ 4**), the arbitrator did not address Falken's authority.

5       8.    The arbitrator found alternatively that "Falken is estopped from denying its
6   submissions to arbitration as a result of its own conduct" because (a) "Pure's claims presume the
7   existence of the Core Settlement Agreement and its claims arise out of and are directly related to that
8   document," (b) "the allegations of the claims in arbitration are bottomed upon contentions of
9   interdependent and concerted misconduct by signatory NVID and non-signatory Falken," and (c)
10  "the arbitration process would be meaningless here absent Falken's involvement." **(Pure Exhibit G**
11  **at 5-6.)**

12      9.    The arbitrator relied on <u>Grigson v. Creative Artists Agency</u>, 210 F.3d 524 (5th Cir.
13  2000), for his estoppel holding **(Pure Exhibit G at 5)**, although Falken had cited Fifth Circuit
14  authority holding that <u>Grigson</u> does not permit a finding that a nonsignatory <u>defendant</u>, like Falken,
15  who has asserted no claims under the agreement, can be estopped from relying on its status as a
16  nonsignatory to avoid arbitration.   Instead, <u>Grigson</u> provides that a nonsignatory defendant can
17  compel a signatory plaintiff to arbitrate.  **(Pure Exhibit E at 7.)**

18      10.   The arbitrator did not address Falken's authority and ordered Falken to answer or
19  otherwise plead to the claim within 10 days. **(Pure Exhibit G at 6.)**

20      11.   In response, Falken filed an action in the Southern District of New York on February
21  10, 2004, seeking an order enjoining Pure Bioscience and the AAA from proceeding with
22  arbitration.  **(Rovell Declaration, Exhibit 1, ¶ 5.)**  That action was voluntarily dismissed **(Exhibit**
23  **3)** pursuant to a stipulation providing that no default would be entered against Falken in the
24  arbitration unless and until a court had determined that the arbitrator had jurisdiction over Falken
25  **(Exhibit 4.)**

26      12.   Falken did not thereafter appear in the arbitration and, as acknowledged by the
27  arbitrator, continued to maintain the position that Falken is not a party to [the] proceeding." (6/17/04

28                                          4

1 | **Order attached as Exhibit 9.)**

2 |     13.   Although the arbitrator was notified of the stipulation, he has entered an order setting

3 | the claim for hearing on September 20, 2004.

4 |     14.   The Omnibus Assignment by which Falken had acquired some of NVID's rights

5 | under the Core Settlement Agreement and on which Pure Bioscience relies in seeking to compel

6 | Falken to arbitrate was rescinded on or about December 8, 2003, by a Covenant to Stand Seized.

7 | **(Exhibit 5.)**

8 | <center>**Argument**</center>

9 |

10 | I.   **FALKEN DID NOT ASSUME THE OBLIGATIONS OF THE CORE
SETTLEMENT AGREEMENT AS IT ONLY ACCEPTED A PARTIAL
ASSIGNMENT OF ITS BENEFITS, IT HAS NOT RECEIVED ANY OF THOSE
BENEFITS, AND THE ASSIGNMENT WAS RESCINDED**

13 | Pure Bioscience's argument that Falken is bound to the obligations of the Core Settlement

14 | Agreement, including the arbitration provision, because it received NVID's rights to potential future

15 | royalties under the Core Settlement Agreement (Pure Mem. at 20-22), devolves from section 1589 of

16 | the California Code, which provides that "[a] voluntary acceptance of the benefit of a transaction is

17 | equivalent to a consent to all the obligations arising from it . . . ." Indeed, Pure Bioscience quotes

18 | _Recorded Picture Co. v. Nelson Entertainment, Inc._, 53 Cal. App. 4th 350, 362, 612 Cal. Rptr. 2d

19 | 742, 748 (2d Dist. 1997), for the proposition under section 1589 that "[a]ssumption of obligations

20 | may be implied from acceptance of benefits under the contract." (Pure Mem. at 21.) What Pure

21 | Bioscience does not mention, however, is that the court went on to note that, "section 1589 'has

22 | generally been held to apply only where the person accepting the benefit was a party to the original

23 | transaction.'" Moreover, it stated, although there is an exception to the rule for assignees of a

24 | contract, that exception only applies where "_all_ benefits of a full performance have inured to him."

25 | (Emphasis in original.) Thus, an assignee "is liable to the other party equally with the assignor" only

26 | where "the executory provisions of the contract are fully performed, _the benefit inuring solely to the_

28 | <center>5</center>

1   *assignee*, and where by his actions he holds himself out as personally liable and *recognizes* the

2   original contract as binding upon him . . . ."  (Emphasis in original.)

3         Thus, "mere assignment of rights under an executory contract does not cast upon the assignee

4   the obligations imposed by the contract upon the assignor . . . ."  53 Cal. App. 4th at 362, 612 Cal.

5   Rptr. 2d at 748 (quoting Enterprise Leasing Corp. v. Shugart Corp., 231 Cal. App. 3d 737, 745, 282

6   Cal. Rptr. 620 (1991)).  Cf. Lachmar v. Trunkline Lng Co., 753 F.2d 8, 9-10 (2d Cir. 1985) ("Under

7   New York law . . . the assignee of rights under a bilateral contract is not bound to perform the

8   assignor's duties under the contract unless he expressly assumes to do so"; "[i]ncluded among the

9   duties to which this rule has reference is the duty to arbitrate").  Instead, the relevant inquiry is

10   whether the assignee has received full performance. Here, Falken has indisputably yet to obtain any

11   benefit under the Core Settlement Agreement as no royalty has ever been paid to it.  Pure

12   Bioscience's argument that Falken is bound to all the obligations of the agreement when it has not

13   received a single benefit from it is absurd and contrary to the law.

14         Moreover, because the relevant inquiry is receipt of performance, Pure Bioscience's

15   argument that NVID had assigned all of its rights under the Core Settlement Agreement, not just the

16   right to royalties (Pure Mem. at 20), is irrelevant. But, assuming, *arguendo*, that it was relevant, it is

17   simply wrong. For, the Omnibus Assignment states that the purpose of the agreement is to assign

18   NVID's "entire right, title and interest . . . in, to and under the said Axenohl patent," not the Core

19   Settlement Agreement.  (**Omnibus Assignment, Exhibit 2 at 2, Preamble.**)  Contrary to Pure

20   Bioscience's contention in other proceedings that the fact that the assignment includes 17 paragraphs

21   of assignments is evidence that all of the rights and benefits set forth in the Core Settlement

22   Agreement were assigned to Falken, paragraphs iii-xvii all state in slightly different words that

23   NVID is assigning all rights and interests to claims and/or money to become due under the "Axenohl

24   patent." The only paragraphs that relate to the Core Settlement Agreement or Pure Bioscience are

25   paragraphs i and ii, which assign the right to moneys due to NVID under the Core Settlement

26   Agreement and claims that NVID may have as of the date of the assignment under the Core

27   Settlement Agreement. Some of the rights provided to NVID in the Core Settlement Agreement are

28                       6

1   not included in the assignment, such as the provisions in Article 4 of the Core Settlement

2   Agreement, which provide for the transfer of Pure Bioscience shares, audit rights, amendment of the

3   arbitration claim, and a release.

4          Thus, while the arbitrator looking at the verbiage of the Omnibus Assignment was under the

5   impression that it attempted to convey more than just the rights to future royalties and a potential

6   reversionary right, it did not.  Indeed, Pure Bioscience in a draft press release acknowledged this,

7   stating that NVID only assigned to Falken its "right to potential future royalties" in connection with

8   the Axenohl technology and patents.  (See **draft press release attached as Exhibit 6.**)

9          Finally, again assuming *arguendo* that the extent of the rights assigned, rather than the

10  performance received, was relevant, as set forth in Pure Bioscience's memorandum at page 21, the

11  assignment was rescinded **(Exhibit 5)** and there is no longer any basis to suggest that Falken is

12  subject to the arbitration provision of the Core Settlement Agreement as an assignee of rights under

13  it.

14  **II.    AS FALKEN HAS NOT ATTEMPTED TO ENFORCE ANY RIGHTS UNDER THE**
15  **CORE SETTLEMENT AGREEMENT, IT IS NOT ESTOPPED BY EITHER THE**
     **INTERTWINING CLAIMS OR EXPLOITATION OF BENEFITS THEORIES OF**
16  **ESTOPPEL FROM DENYING THE ARBITRATION AGREEMENT**

17
        Neither of the estoppel theories by which a nonsignatory may be compelled to arbitrate --
18
    "intertwining claims" and exploitation of benefits" – (see Pure Mem. at 22-23) are applicable here.
19
    For, both theories require that the party sought to be estopped from denying arbitration is attempting
20
    to enforce rights under the contract – is, in other words, a plaintiff.  The paucity of Pure Bioscience's
21
    argument on the estoppel issue is exemplified by the minimal attention directed to it in its brief at
22
    pages 22-23 and its misplaced reliance here and/or in the arbitration on certain cases.[1]
23

24

25

26  [1] Although Pure Bioscience relies here exclusively on its waiver argument and the opinion of the
    arbitrator, in the event that it resurrects in its reply brief the estoppel arguments made previously to
27  the arbitrator, Falken will address them here.

28                                                      7

1       One of the cases on which Pure Bioscience has relied, for example, is <u>Deloitte Noraudit A/S v.</u>

2   <u>Deloitte Haskins & Sells</u>, 9 F.3d 1060, 1064 (2d Cir. 1993). In that case, however, the party sought

3   to be compelled to arbitration was sent the agreement before it was executed and had not objected to

4   its terms. Unlike here, the existence of that party was known at the time of the assignment and it

5   was intended to be bound by the agreement when it was executed. Moreover, that party had

6   accepted the benefits of the agreement and had <u>itself</u> sued to enforce them. Accordingly, the court

7   held that it was estopped from objecting to arbitration. Similarly, in <u>McBro Planning & Dev, Co. v.</u>

8   <u>Triangle Elec. Constr. Co.</u>, 741 F.2d 342, 343-44 (11th Cir. 1984), on which Pure Bioscience relies

9   here (Pure Mem. At 23), a nonsignature plaintiff (i.e. Triangle, an electrical contractor) was estopped

10  from avoiding arbitration of its claims against a signatory defendant (i.e. McBro, the construction

11  manager) for breach of an agreement subject to arbitration with the owner. Thus, in both cases, a

12  nonsignatory <u>plaintiff</u> had sued under an agreement containing an arbitration clause.

13      Here, by contrast, Falken has filed no suit, has taken no action to enforce the Core Settlement

14  Agreement, and has not received any benefits under it. At most, Pure Bioscience has pointed to

15  Internet postings of dubious parentage claiming that Falken has certain rights under the Axenohl

16  patent (Pure Mem. at 22), which is a far cry from a party attempting to judicially enforce an

17  agreement on one hand and denying its binding effect on the other.

18      This case is therefore unlike <u>Deloitte Noraudit</u> and <u>McBro</u>, but instead is like <u>Thomson-CSF,</u>

19  <u>S.A. v. American Arbitration Ass'n</u>, 64 F.3d 773, 778-79 (2d Cir. 1995), on which Pure Bioscience

20  has also previously relied, where the court of appeals held that the non-signatory was <u>not</u> bound

21  under estoppel principles to arbitrate. The agreement at issue provided that a purchasing party

22  would purchase certain equipment exclusively from the supplying party and the supplier in turn

23  agreed that it would not sell the equipment to anyone else. 64 F.3d at 775. The purchasing party was

24  ultimately sold to another party, which integrated the purchasing party into one of its subsidiaries.

25  64 F.3d at 775. The acquiring company had notice of the exclusivity agreement, which contained an

26  arbitration clause, before it acquired the purchasing party, just as Falken has here been alleged to

27  have had notice of the Core Settlement Agreement with its arbitration provision before it was

28                                       8

1    assigned any rights by NVID, and the supplier even notified the parent <u>before</u> it acquired the

2    subsidiary that it intended to bind the parent as it bound the subsidiary. 64 F.3d at 775. Although

3    the district court held that the parent was bound to the arbitration clause because (1) it had notice of

4    the agreement before it bought the purchasing party, (2) the supplier expressed its intention to bind

5    the parent to the agreement, (3) the purchasing party was incorporated into the parent's corporate

6    structure, and (4) the parent benefited from that incorporation, 64 F. 3d at 778, the court of appeals

7    held that the parent was not bound to the arbitration provision in the agreement because it had never

8    benefited from the agreement by purchasing any equipment from the supplier or attempted to

9    enforce the exclusivity provisions against the supplier. 64 F.3d at 779.

10       Similarly, in this case, Falken's knowledge of the Core Settlement Agreement with its

11    arbitration provision, like the knowledge of the parent in <u>Thomson-CSF</u> of the arbitration agreement,

12    is insufficient to require Falken to arbitrate. The relevant inquiry is whether Falken has taken steps

13    to enforce the Core Settlement Agreement. Because Falken, like the parent in <u>Thomson-CSF</u> and

14    unlike the parties sought to be compelled to arbitration in <u>McBro Planning</u> and <u>Deloitte Noraudit</u>,

15    has not received the benefits of the agreement and sought to enforce them, it is not bound to its

16    burdens, including the arbitration clause.

17       Pure Bioscience has previously nonetheless implied that because Falken "<u>could</u> compel

18    enforcement of its rights to the Axenohl patent . . . through arbitration with Pure Bioscience," *Pure*

19    *Bioscience ought to be able to compel arbitration against Falken. This contention, however, is false.*

20    For, <u>Deloitte Noraudit</u> and <u>Thomson-CSF</u> establish that a non-signatory is not estopped from

21    denying an arbitration provision in an agreement unless it is actually attempting to enforce

22    provisions of the agreement against a signatory. Moreover, as set forth in <u>Bridas S.A.P.I.C. v.</u>

23    <u>Government of Turkmenistan</u>, 345 F.3d 347, 360-62 (5th Cir. 2003), equitable estoppel under either

24    an "intertwined claims" or "direct benefits" theory is only applicable when a signatory plaintiff

25    attempts to avoid arbitration with a nonsignatory defendant because "to do otherwise would permit

26    the signatory plaintiff to 'have it both ways.'" In other words, the signatory plaintiff "cannot, on one

27    hand, seek to hold the nonsignatory defendant liable pursuant to duties imposed by the agreement,

28                                       9

1    which contains an arbitration provision, but, on the other hand, deny arbitration's applicability

2    because the defendant is a nonsignatory." 345 F.3d at 360-61.

3        Thus, estoppel applies "to prevent a signatory from avoiding arbitration with a nonsignatory

4    when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the

5    agreement that the estopped party has signed." 345 F.3d at 361. Contrary to Pure Bioscience's

6    contention, however, because "arbitration is guided by contract principles, the reverse is not also

7    true: a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely

8    affiliated that nonsignatory is with another signing party." 345 F.3d at 361 (emphasis omitted).

9    Pure Bioscience's allegations concerning the alleged connections between Falken and NVID are

10    therefore irrelevant.

11        Moreover, the same analysis applies when a nonsignatory has received direct benefits under an

12    agreement containing an arbitration clause. This form of estoppel applies where "a nonsignatory

13    knowingly exploits the agreement containing the arbitration clause." (Citations omitted.) Bridas,

14    345 F.3d at 362. Where a nonsignatory has not sued to enforce the agreement, Bridas holds that it

15    has not "exploited" the agreement "to the degree that the cases that consider applying this version of

16    estoppel require." 345 F.3d at 362. As Falken has not sued Pure Bioscience under the Core

17    Settlement Agreement, it cannot be estopped from denying the applicability of the arbitration

18    provision to it.

19        Although Pure Bioscience relies on Grigson v. Creative Artists Agency, 210 F.3d 5245, 527 (5th

20    Cir. 2000), in support of its estoppel argument, the Fifth Circuit in Bridas noted that the district court

21    there had misapplied its opinion in Grigson, just as Pure Bioscience urged the arbitrator to do here,

22    when it found that a nonsignatory defendant, like Falken, could be estopped from relying on its

23    status as a nonsignatory to avoid arbitration. Instead, the Fifth Circuit in Bridas stated that in

24    Grigson, it had estopped a "signatory *plaintiff* from relying upon the defendants' status as a

25    nonsignatory to prevent *defendants* from compelling arbitration under the agreement." Bridas, 345

26    F.3d at 360 (emphasis changed from original). Moreover, the court went on, Grigson "does not

27    apply to the circumstances of [Bridas] where the [nonsignatory] Government, unlike the party

28                                        10

1 estopped in <u>Grigson</u>, ... never sued [the signatory] on the agreement." <u>Bridas</u>, 345 F.3d at 361.
2 <u>Grigson</u> and <u>Bridas</u> therefore reject Pure Bioscience's argument here that Falken, as a nonsignatory
3 defendant, can be compelled to arbitrate.

4 **III.   FALKEN NEVER WAIVED ITS RIGHT TO HAVE A COURT DETERMINE**
5 **WHETHER IT WAS SUBJECT TO THE ARBITRATION AGREEMENT TO**
6 **WHICH IT WAS NOT A PARTY**

7     Pure Bioscience admits that "whether a particular person is a party to an arbitration is a
8 matter for a court to determine." (Pure Mem. at 12.)  Although, as set forth above, the arbitrator was
9 simply wrong when he found that Falken was estopped from denying the arbitration agreement, Pure
10 Bioscience principally bases its motion to compel on an argument that Falken waived its right to
11 have a court decide whether it is subject to the arbitration agreement, to which it is not a party, by
12 voluntarily appearing in the arbitration specially and for the limited purpose of objecting to the
13 jurisdiction of the AAA and the arbitrator over it and briefing the issue. (Pure Mem. at 13-17.)  The
14 cases on which Pure Bioscience relies, however, either do not support its argument or affirmatively
15 establish that Falken did <u>not</u> waive its right to have the issue decided by a court.

16     First, Pure Bioscience cites two cases, <u>Kustom Kraft Homes v. Leivenstein</u>, 14 Cal. App. 3d
17 805, 92 Cal. Rptr. 650 (2d Dist. 1971), and <u>O'Malley v. Petroleum Maintenance Co.</u>, 48 Cal. 2d 107,
18 308 P.2d 9 (1957), for the proposition that "one who voluntarily joins an arbitration becomes a party
19 to it." (Pure Mem. at 12.)  Both cases, however, involved respondents who admitted or agreed that
20 the claim on the merits should be decided in arbitration.  Specifically, in <u>Kustom Kraft Homes</u>, the
21 respondent had demurred to a trial court action against it on the ground that the claim was subject to
22 arbitration.  14 Cal. App. 3d at 809-10.  Similarly, in <u>O'Malley</u>, the respondent signed a submission
23 agreement providing that the parties agreed to submit to arbitration the claim that the discharge of
24 respondent's employee was proper.  48 Cal. 2d at 110.  Accordingly, neither case is relevant as
25 Falken indisputably never acquiesced to the arbitrator deciding Pure Bioscience's claims on the
26 merits.  Instead, Falken's counsel "clearly stated its position that it was appearing for the limited

28 11

1  purpose of objecting to AAA's jurisdiction over Falken, based on the fact that Falken was not a

2  signatory to the Agreement." (Pure Mem. at 2-3.)

3        Pure Bioscience's reliance at pages 12-13 and 15-16 of its memorandum on Lovret v.

4  Seyfarth, 22 Cal. App. 3d 841, 101 Cal. Rptr. 143 (2d Dist. 1972), Ficek v. Southern P. Co., 388

5  F.2d 655 (9th Cir. 1964), International Bro. of Teamsters v. Washington Employers, Inc., 557 F.2d

6  1345 (9th Cir. 1977), George Day Constr. Co. v. United Bro. of Carpenters, 722 F.2d 1471 (9th Cir.

7  1984), Francesco's B, Inc. v. Hotel & Rest. Emp. & Bartenders Union, 659 F.2d 1383, 1387-88 (9th

8  Cir. 1981), and Fortune, Alsweet & Eldridge, Inc. v. Daniel, 724 F.2d 1355 (9th Cir. 1983) (cited as

9  "Daniel" by Pure Bioscience), is misplaced for the same reason. For, in Lovret, the court stated that

10 "[o]ne submitting a counterclaim . . . may not claim after an adverse ruling in arbitration that the

11 counterclaim was not an issue in the arbitration proceedings" because a "claimant may not

12 voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable,

13 then challenge the authority of the arbitrators to act." 22 Cal. App. 3d at 859-60. See also Ficek,

14 388 F.2d at 657 (quoted in Pure Mem. at 13). Although the respondent wife in Lovret contended

15 that she was not a party to the arbitration agreement, she participated in the arbitration, did not seek

16 an "order from the court forbidding the arbitrator from joining her as a party," 22 Cal. App. 3d at

17 860, admitted in a petition to vacate the award that she was a party to the agreement containing the

18 arbitration clause, 22 Cal. App. 3d at 861, and benefited from the award and the judicial proceedings

19 to correct and confirm the award by receipt of releases or waivers of lien, 22 Cal. App. 3d at 861-62.

20        Similarly, as set forth in Pure Bioscience's memorandum at 15-16, in both Daniel and Ficek,

21 as well as International Bro. of Teamsters, 557 F.2d at 1349-50, and George Day Construction, 722

22 F.2d at 1475, the parties who objected to the arbitrator's jurisdiction participated in the hearings on

23 the merits without reserving the issue of arbitrability and were held to have consented to the

24 arbitrator's determination of the merits. The rationale and ruling were the same in Francesco's B,

25 Inc., 659 F.2d at 1387-88, although the procedural posture was slightly different in that the

26 respondent participated in the arbitration hearing after a trial court erroneously held that the

27

28                                       12

1    arbitrator should decide the issue of arbitrability without appealing the court's order referring the
2    arbitrability issue to the arbitrator.

3         Here, by contrast, Falken is not participating in the arbitration of the merits of Pure
4    Bioscience's claim **(Exhibit 9)**, told the arbitrator at the oral argument on its objection to arbitration
5    that the arbitrability decision was one for the courts **(Exhibit 1, ¶ 3)**, sought a court order precluding
6    arbitration **(Exhibit 1, ¶ 5)**, is not seeking and has not received any benefit or award from the
7    arbitrator, and has not submitted any claim on the merits to the arbitrator **(Exhibit 9)**.

8         Although, as demonstrated above, the majority of Pure Bioscience's cases involve the
9    irrelevant effect of voluntarily submitting a claim or acquiescing to the determination of a claim in
10   arbitration, it also relies on similarly irrelevant cases where either (1) the court held that the
11   arbitrability issue is to be decided by the court, which then proceeded to decide the issue, see John
12   Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547&557 (1964), United Steelworkers of America
13   v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960), or (2) the issue was submitted to and decided
14   by the court in the first instance without any issue as to who decides arbitrability having arisen, see
15   Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1213 (9th Cir. 1998).

16        Pure Bioscience only cites two cases that in any way address the issue of submission of the
17   issue of arbitrability to the arbitrator and/or waiver of the right to have a court decide the issue.  In
18   the first, United Steelworkers, although the arbitrability issue was never submitted to the arbitrator,
19   the Supreme Court in dicta noted that

20        [w]here the assertion by the claimant is that the parties excluded from court determination
21        not merely the decision of the merits of the grievance but also the question of its arbitrability,
          vesting power to make both decisions in the arbitrator, the claimant must bear the burden of a
22        clear demonstration of that purpose.

23   363 U.S. at 583, n.7.  Thus, United Steelworkers provides that Pure Bioscience has a burden of
24   clearly demonstrating that Falken "excluded from court determination" and vested in the arbitrator
25   the power to decide whether the claim against Falken is arbitrable.  Moreover, the only other
26   relevant case cited by Pure Bioscience, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938
27   (1995) (see Pure Mem. at 12), establishes that Pure Bioscience cannot meet that burden.  For, in First
28

13

1  <u>Options</u> the U.S. Supreme Court held that the respondent had not waived its right to have a court

2  decide the arbitrability issue under circumstances identical to those here.

3         Specifically, the Court noted that the "question 'who has the primary power to decide

4  arbitrability' turns upon what the parties agreed about *that* matter." 514 U.S. at 943 (emphasis in

5  original).   Moreover, it held, "[c]ourts should not assume that the parties agreed to arbitrate

6  arbitrability unless there is 'clear and unmistakable' evidence that they did so." 514 U.S. at 944.

7  Although there is a presumption that a particular dispute is within the scope of an arbitration

8  agreement, the presumption is reversed on the question of whether parties have agreed to submit the

9  arbitrability question to the arbitrator. For, the Court noted, parties "often might not focus upon that

10 question or upon the significance of having arbitrators decide the scope of their own powers" and

11 "interpret[ing] silence or ambiguity on the 'who should decide arbitrability' point as giving the

12 arbitrators that power . . . might too often force unwilling parties to arbitrate a matter they reasonably

13 would have thought a judge. nor an arbitrator. would decide." 514 U.S. at 944-45.

14        In applying these principles to the facts of the case before it, the Court held that the claimant

15 could not "show that the [respondents] clearly agreed to have the arbitrators decide (*i.e.* to arbitrate)

16 the question of arbitrability." 514 U.S. at 946.  Although the claimant relied, as Pure Bioscience

17 does here (Pure Mem. at 13-14), on the respondents "filing with the arbitrators a written

18 memorandum objecting to the arbitrators' jurisdiction," the Court stated that "*merely arguing the*

19 *arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a*

20 *willingness to be effectively bound by the arbitrator's decision on that point.*"[2] 514 U.S. at 946.

21 Indeed, the Court found that "forcefully objecting to the arbitrators deciding their dispute with

22

23

---

24 [2] Pure Bioscience also suggests that a waiver may be found in Falken's not having objected to the
   arbitrator's December 2, 2003, order  providing that "[a]ll parties who are determined to be subject
25 to the jurisdiction of the Association . . . shall file any response and/or counterclaim on [January 26,
   2004]." (Pure Mem. at 13.) Pure Bioscience neglects to mention, however. that the arbitrator in that
26 order expressly acknowledged that Falken was appearing specially for the limited purpose of
   contesting jurisdiction and that "nothing in [the order] shall constitute a determination that Falken . .
27 . has submitted to the jurisdiction of the Association or the arbitrator . . . ." **(Pure Exhibit B at 1.)**

28                                            14

1  [claimant]" indicated that "they [did] *not* want the arbitrators to have binding authority over them."

2  514 U.S. at 946 (emphasis in original).

3  The claimant in First Options, also like Pure Bioscience here (see Pure Mem. at 17),

4  additionally argued that respondents "had other ways to get an independent court decision on the

5  question of arbitrability without arguing the issue to the arbitrators (*e.g.* by trying to enjoin the

6  arbitration, or by refusing to participate in the arbitration and then defending against a court petition .

7  . . to compel arbitration)." 514 U.S. at 946. In response, the Court held that this argument "simply

8  does not say anything about whether the [respondents] intended to be bound by the arbitrators'

9  decision." 514 U.S. at 946.

10  Moreover, even if not trying to enjoin the arbitration or refusing to participate did say

11  something about whether a respondent intends to be bound. (1) Falken *did* attempt to get an

12  independent court decision on the question of arbitrability by filing an action to enjoin the arbitration

13  in the Southern District of New York (**Exhibit 1, ¶ 5**). (2) it *has* refused to participate in the

14  arbitration (**Exhibit 9**), and (3) it *is* defending against a petition to compel arbitration here. The New

15  York action was only dismissed after the parties entered a stipulation providing that no default

16  would be entered against Falken unless and until a court had determined that the arbitrator had

17  jurisdiction over Falken. (**Exhibit 3.**) When the stipulation was presented to the arbitrator,

18  however, he nonetheless set the claim for a hearing on the merits.[3]  Similarly, Pure Bioscience is

19

20  [1] The arbitrator is acting not only in defiance of the stipulation, but also of this proceeding as he is

21  aware that this Court is scheduled to hear the motion to compel in October, but nevertheless

scheduled the arbitration hearing for September 20.  This Court has authority under 28 U.S.C. §

22  1651 to enjoin the arbitration from proceeding until after it adjudicates the motion to compel.

23  His motivation appears to be pecuniary as he has submitted bills for his work in connection with

the arbitration in the vicinity of $50,000.  He knows that the other respondent, NVID, is defunct so

24  the only way to get paid by respondents is to make Falken a party.  As such, the arbitrator is an

25  interested party, which violates due process.  See Connally v. Georgia, 429 U.S. 245 (1977)

(procedure whereby magistrate received compensation for search warrants he issued, but nothing to

26  disapprove them, violated due process); Ward v. Village of Monroeville, 409 U.S. 57 (1972) (mayor

27  acting as part-time magistrate for traffic offenses violated due process since he helped direct city

expenditures from funds derived from fines he imposed); Tumey v. Ohio, 273 U.S. 510, 523, 531

28  15

1 | nonetheless pursuing the arbitration, claiming that an award will not be entered by default in

2 | Falken's absence. but rather will be entered on a "contested arbitration hearing," because Pure

3 | Bioscience will present evidence at the hearing. **(See Pure 9/2/04 letter attached as Exhibit 7 and**

4 | **Falken 9/3/04 response attached as Exhibit 8.)** The fact that Falken has not entered an appearance

5 | **(Exhibit 9)** and will not be there to contest the evidence, however, by definition means that the

6 | hearing will not be contested.   Accordingly, Pure Bioscience will be accepting a default award in

7 | breach of its stipulation.

8 | The Court in First Options concluded that although respondents briefed the issue of

9 | arbitrability to the arbitrator. they "did not clearly agree to submit the question of arbitrability to

10 | arbitration, the Court of Appeals was correct in finding that the arbitrability of the . . . dispute was

11 | subject to independent review by the courts" and the award was vacated.  514 U.S. at 947.  Pure

12 | Bioscience's own authority has therefore rejected its contention that "having submitted the issue of

13 | 'arbitrability' to the arbitrator and having lost on it, Falken may not now again try its same case in

14 | another forum with the hope of a [different] result . . . ." (Pure Mem. at 17.)

15 | For the same reasons found by the Supreme Court in First Options, Falken should not be

16 | compelled to arbitrate here.  Falken has maintained throughout that the arbitrator does not have

17 | jurisdiction over it.  It objected to arbitrability at the arbitration, it briefed the issue. and at the oral

18 | argument on its objection to jurisdiction (not, as Pure Bioscience correctly notes at page 14, n. 7, of

19 | its motion, in the briefs), Falken's counsel, citing American Builder's Assn v. Au-Yang, 276 Cal.

20 | Rptr. 262, 266 (Cal. Ct. App. 1990), informed the arbitrator that the question of arbitrability was not

21 | for the arbitrator to decide, but rather for the courts.  **(Rovell Declaration, Exhibit 1, ¶ 3.)**  Thus,

22 | although the arbitrator could and should have held that he did not have jurisdiction and declined to

23 |

24 |

25 | (1927) (statute permitting mayor to try certain violations held unconstitutional where he received fees in addition to his salary only when he convicted as "subjecting a defendant to trial before a judge having 'a direct, personal, pecuniary interest in convicting the defendant,'" violated due

26 | process).

27 |

28 |

16

1   set the matter for hearing unless and until an order compelling Falken was entered, he nonetheless

2   held that he did have jurisdiction and ordered Falken to answer.  **(Pure Exhibit G.)**  Falken

3   immediately filed a complaint for injunction, which, as set forth above, was dismissed so that Pure

4   Bioscience could file an action to compel arbitration.  Pure Bioscience's suggestion that "[n]othing

5   in the record before this Court indicates any objection by Falken to the arbitrator's authority to act in

6   the matter" is plainly wrong.  (See Pure Mem. at 17.)

7          Finally, Pure Bioscience argues that Falken agreed to submit the issue of arbitrability to the

8   arbitrator because the Core Settlement Agreement "plainly states the parties' intent to submit 'any

9   questions concerning the interpretation of enforcement of this agreement' to the AAA," whose rules

10  provide that the arbitrator may rule on his own jurisdiction.  (Pure Mem. at 19.)  This argument,

11  however, has already been rejected by this Court in its August 13, 2004, order in response to the

12  analogous argument that Falken had agreed to service of the complaint here by mail because the

13  AAA rules provide for service by mail.  In response to that argument, the Court held that "the

14  arbitration clause in the Core Settlement Agreement does not explicitly incorporate the AAA

15  Commercial Rules" and Pure Bioscience's "argument presumes [Falken] is subject to the arbitration

16  clause, a matter that [Falken] disputes."  As this Court is being asked to decide whether Falken is

17  subject to the arbitration clause, Pure Bioscience is attempting to put the cart before the horse in

18  suggesting that Falken agreed to submit arbitrability issues to the arbitrator by means of that clause.

19

20

21

22

23

24

25

26

27

28                                17

## Conclusion

For the reasons set forth above, Falken Industries Ltd. requests that this Court deny Pure Bioscience's motion to compel arbitration.

FALKEN INDUSTRIES, LTD.

By _____

Its Attorney

Joel S. Seidel, SB #175275
10325 Aldea Avenue
Granada Hills, CA 91344
Tel: (818) 832-7850
Fax: (818) 832-7889

Dated:   September 7, 2004

18

1

<u>Proof of Service</u>

2      The undersigned attorney for Falken certifies that he served a copy of the foregoing
memorandum on the following counsel for petitioner Pure Bioscience by fax without exhibits and by
3 placing a copy with exhibits in a properly addressed, postage prepaid envelope and depositing it in
the U.S. mail in Granada Hills, California on September 7, 2004:

4

5 Wolfgang F. Hahn                          Charles E. Brumfield
Wolfgang F. Hahn& Associates               C/o Pure Bioscience
7160 Caminito Pepino                        1725 Gillespie Way
6 La Jolla, CA  92037                        El Cajon, CA  92020
Fax: (858) 456-5080                         Fax: (619) 596-8700
7

8                                           Joel S. Seidel

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      19

## Table of Contents of Exhibits

| Exhibit No. | Description | Page No. |
|---|---|---|
| Exhibit 1 | Declaration of Michael J. Rovell | 4 |
| Exhibit 2 | Omnibus Assignment | 5 |
| Exhibit 3 | Joint Stipulation | 11 |
| Exhibit 4 | Dismissal of SDNY action | 13 |
| Exhibit 5 | Covenant to Stand Seized | 14 |
| Exhibit 6 | Press Release | 23 |
| Exhibit 7 | 9/2/04 Hahn letter | 24 |
| Exhibit 8 | 9/3/04 Rovell letter | 29 |
| Exhibit 9 | 6/17/04 arbitration order | 31 |

Falken's Memorandum In Opposition to Pure Bioscience's
Motion To Compel Arbitration

04 cv 1147

U MALLY & ASSOCIATES

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

FALKEN INDUSTRIES, LTD,                      )
                                             )
                Plaintiff,                   )
                                             )
        v.                                   ) No. 04 CV 1073
                                             )
AMERICAN ARBITRATION ASSOCIATION,            )
INC. INTERNATIONAL CENTRE FOR                )
DISPUTE RESOLUTION and PURE                  )
BIOSCIENCE, f/n/a Innovative Medical         )
Services,                                    )
                                             )
                Defendants                   )

## DECLARATION OF MICHAEL J. ROVELL

Michael J. Rovell declares the following under penalty of perjury:

1.      I am an attorney licensed to practice in the State of Illinois and am lead counsel for Falken Industries, Ltd. both in this action and in an arbitration that was filed against it and other parties in the American Arbitration Association ("AAA") by Pure Bioscience, no  50 T 133 00528 03.

2       I appeared specially in that arbitration for the purpose of objecting to the jurisdiction of the AAA over Falken as Falken was not a signatory to the arbitration clause in the Core Settlement Agreement pursuant to which Pure Bioscience had filed its claim with the AAA.

3.      The arbitrator requested briefing on the objection and after the briefing was complete, heard oral argument. I cited to the arbitrator California law, American Builder's Ass'n v. Au-Yang, 276 Cal. Rptr. 262, 266 (Cal. Ct. App. 1990), providing that the question of whether a nonsignatory is a party to an arbitration agreement is one for a trial court in the first instance and may not be determined by an arbitrator.

Exhibit ___1___

4. I also cited law, <u>Recorded Picture Co. v. Nelson Entertainment, Inc.</u>, 53 Cal. App. 4th 350, 362, 612 Cal. Rptr. 2d 742, 748 (2d Dist. 1997), for the proposition that before a party may be found to have impliedly accepted all the burdens of an agreement, which would include an arbitration clause, "all the benefits of a full performance [must have] inured to him." I also informed the arbitrator that no benefits had inured to Falken as a consequence of the assignment to it of some of the rights under the Core Settlement Agreement as it had not yet received any royalties under the assignment

5. After the arbitrator ruled that Falken was subject to the arbitration clause in the Core Settlement Agreement, I caused to be filed on behalf of Falken this action for injunction and declaratory judgment that Falken is not subject to the arbitration clause in the Core Settlement Agreement. I also caused a copy of the complaint to be faxed to the AAA case administrator for the Pure Bioscience arbitration, the arbitrator, and counsel for Pure Bioscience.

6. In response, the arbitrator scheduled a telephonic conference for February 25  The telephonic conference took place during two sessions that day because my mother had a medical problem with which I had to deal. During the first session, the arbitrator indicated he was going to proceed further unless and until he was enjoined  He extended to March 1 the time for Falken to file an answer. He "warned" me that if an answer was not filed, he would take action and enter an order he believed would be permissible. I clearly understood that if an answer was not filed, he would enter a default. The subject again came up during the second session, at which time he emphasized that there would be naks if an answer was not filed notwithstanding my statements that he did not have the power to compel Falken to arbitrate because it was not a signatory to the

-2-

arbitration agreement   He urged me to reconsider my position and stated that he was providing me more time to do so, but that if Falken persisted in its position and did not file an answer, he was prepared to take immediate action once the deadline had expired. While he did not say in words that a "default would be entered," I clearly understood that was his intention, as otherwise there would be no reason to extend the deadline and "warn" me of "risks" that would befall Falken.

       7.    I estimate that if Falken answered the arbitration complaint and participated in the arbitration through discovery and trial, more than $75,000 in attorney's fees will be incurred, not to mention the expenses that would be incurred by me and Falken, which is a New Jersey corporation with its principal place of business in France

       8.    Attached to Falken's memorandum in support of its motion for temporary restraining order and preliminary injunction are the following exhibits, which are true and correct copies of each: Exhibit 1 is a copy without exhibits of the Statement of Claims filed by Pure Bioscience in the AAA; Exhibit 2 is a copy, without exhibits, of the Core Settlement Agreement between Pure Bioscience and NVID that was attached as Exhibit 1 to Pure Bioscience's Statement of Claim; Exhibit 3 is a copy of the opinion (titled "Preliminary Aspect") of the arbitrator finding that Falken was subject to the arbitration agreement; Exhibit 5 are two pages from the AAA's website, and Exhibit 6 is a copy of a letter I caused to be faxed to the AAA staff attorney who had written to me on behalf of the AAA in response to the filing of this complaint.

       9.    The letter attached to the brief as Exhibit 6 requested that the AAA notify me by 3:00 pm Eastern time whether the AAA would provide assurances that no default would be entered against Falken until this Court determined whether the arbitrator

had the authority to make a determination as to whether Falken is subject to the arbitration clause in the Core Settlement Agreement. The attorney left me a message indicating that they would not refrain from issuing any order submitted by the arbitrator

   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 1, 2004.

Michael J. Rovell

U MALLY & ASSOCIATES

# OMNIBUS ASSIGNMENT

## OF CLAIMS, CONTRACT, ACCOUNT, RIGHTS, EXPECTANCY, MONIES DUE OR TO BECOME DUE , OPTION(S), INVENTION, PATENT(S), CLAIMS FOR PAST INFRINGEMENT, LICENSES, TRADEMARKS RELATING TO AXENOHL AND AXEN AND ALL DERIVATIVES THEREOF

### DEFINITIONS

*The Axenohl Patent* . Axenohl and its diluted form, "Axen", a silver ion

product with marketable disinfectant properties, invented by Andrew B. Arata, which

invention was assigned to NVID International Inc (NVID) and which is the subject of

a U S. Patent N° 6,197,814, WIPO App. N° WO 99/18790, together with all trade

secrets as defined in California Civil Code section 3426 1 and the case law

interpreting such section, un-patented inventions, all patents pending, filed, or

granted in the United States and in all other countries, know-how and other rights,

related to Axenohl and all rights and incidents of ownership of NVID related thereto,

including, but not limited to the issued and / or applied for patents listed on

Attachment "A" to Exhibit "A" of "The Core Settlement Agreement", as defined herein

below

*The Core Settlement Agreement* : That agreement dated as of November 15,

2001 by and among Innovative Medical Services Inc  a California Corporation,

ET1H20 Corporation, a Nevada Corporation, NVID International Inc, a Delaware

Corporation, Watertronics Ltd, an entity organized under the laws of the United

Kingdom, Aqua Bio Technologies S.A. de C V , a Mexican Corporation, Andrew B.

Arata, Sislecam S.A. a Costa Rican Corporation, David Larson. Aqua Bio

Exhibit 2

Technologies Inc; a Delaware Corporation. Michael Redden, Steve Gordon, George L. Duren and Dr Charles Lewis. a copy of which is annexed hereto as Exhibit "A"

PREAMBLE

WHEREAS. the undersigned is, subject to the provisions of The Core Settlement Agreement, vested with all right. title and interest in the Axenohl patent, patent US6,197,814 B1 dated March 6, 2001 of the United States of America, Exhibit B hereof. together with any further amendments. extensions and the right to recover all damages and profits by reason of past infringements by any person, firm, association or corporation, and

WHEREAS, FALKEN INDUSTRIES LTD is desirous of acquitting the entire right, title and interest of the undersigned,  in, to and under said the said Axenohl patent ;

IT IS AGREED AS FOLLOWS

FOR VALUE RECEIVED. the undersigned sells, transfers, assigns, gives. grants, bargains. and sets over forever to FALKEN INDUSTRIES LTD a New Jersey Corporation (the "Assignee") :

   i)  all of its rights, title and interests to moneys due and to become due. and all claims. demands and causes of action that the undersigned now has, or may have. against INNOVATIVE MEDICAL SERVICES INC (NASDAQ SYMBOL "PURE"). its officers, directors, employees, licensees and assigns from any and all sources and circumstances

*NVID International Inc / Falken Omnibus Assignment - 2*

ii) all of its rights, title and interests to moneys due and to become due, and all claims, demands and causes of action that the undersigned now has, or may have, in relation to a a certain contract settlement agreement entitled 'CORE SETTLEMENT AGREEMENT" dated as of the 15th day of November, 2001, a true copy of which is attached herein as Exhibit "A".

iii) all of its rights, title and interests to moneys due and to become due, and all claims, demands and causes of action that the undersigned now has, or may have upon any statement of account, and / or upon the sales of goods, wares and merchandise relating to, incorporating or in any manner concerning the Axenohl patent and any modification, addendum, improvement, paper(s), document(s) relating thereto

iv) all of its rights, title and interests to moneys due and to become due, in relation with any activity concerning in any manner the technology outlined in the Axhenohl patent and any derivative therefrom, and all claims, demands and causes of action that the undersigned now has, or may have in any goods, and all moneys due therefrom, or that may grow due, upon the claim or account or upon the sale or sales of same

v) all of its rights, title and interests to moneys due and to become due, and all claims, demands and causes of action that the undersigned now has, or may have in any copyright, and in all renewals and extensions of the said copyright that may be secured under the laws now or later in force and effect in the United States of America, or in any other country or countries in relation to, directly or indirectly, the Axhenohl patent and any derivative therefrom

vi) all of its rights, title and interests to moneys due and to become due, and all claims, demands and causes of action that the undersigned now has, or

may have, to any manuscript, notes, journals, scientific and technical books and reflections, studies and records relating to, directly or indirectly the Axenohl patent

vii) all of its rights, title and interests to moneys due and to become due, and all claims, demands and causes of action that the undersigned now has, or may have, to any expectancy relating to, directly or indirectly, the Axenohl patent.

viii) all of its rights, title and interests to moneys due and to become due, and all claims, demands and causes of action that the undersigned now has, or may have, in any judgment obtained by the undersigned against any party in any jurisdiction, relating to, directly or indirectly, the Axenohl patent

ix) all of its rights, title and interests to moneys due and to become due, and all claims, demands and causes of action that the undersigned now has, or may have, to any lien, together with the debt, claim or demand for which such lien was obtained and on which the same is founded, and any and all moneys due or that may become due under it in relation to, directly or indirectly, the Axhenohl patent and any derivative therefrom

x) all of its rights, title and interests to moneys due and to become due, and all claims, demands and causes of action that the undersigned now has, or may have, in any debt due the undersigned from any party for moneys loaned, in relation to, directly or indirectly, the Axhenohl patent and any derivative therefrom

xi) all of its rights, title and interests to moneys due and to become due, and all claims, demands and causes of action that the undersigned now has, or may have, in and to any option agreement relating to directly or indirectly, the Axenohl patent

NVIB International Inc / Falken Omnibus Assignment - 4

the good will of the business symbolized by the mark, and the registration of it.

xvii)    And generally, but without limitation thereby, all of its rights, title and interests to moneys due and to become due, and all claims, demands and causes of action that the undersigned now has, or may have, in and to and under any claims, contract, account, rights, expectancy, monies due or to become due from any source or theory, options, inventions, patents, claims for past infringement or threat thereof, licenses, trademarks, relating to the Axenol patent, Axen, and all derivatives thereof.

All of the foregoing, for assignee's own use and for the use of his legal representatives, as fully and entirely as the same would have been held and enjoyed by the undersigned had this assignment and sale not been made

And, the undersigned irrevocably appoints the Assignee its true and lawful attorney, with full power of substitution and revocation, for its sole use and benefit,

BALANCE OF THIS PAGE INTENTIONALLY LEFT BLANK

NVID International Inc / Falken Omnibus Assignment - 6

and at its own cost and expense, to ask, demand, sue for, collect, receive in the

assignor's name or otherwise, the moneys, claims, demands and causes of action,

pursue every other, additional, alternative or novel remedy, sell, assign, transfer,

pledge, compromise or discharge the whole or any part of them. And generally, to do

all acts necessary and or convenient to accomplish any of the foregoing terms,

intents and or purposes.

In Palm Beach Gardens, Florida

This 12 day of September 2003

NVID INTERNATIONAL, INC

Steven GORDON
Chairman and Chief Executive Officer

STATE OF FLORIDA
COUNTY OF Palm Beach /SS

Sworn to me, this 12 day of September 2003

Notary Public

Ashley Carroll
Commission # DD 055622
Expires Oct. 16, 2004
Bonded Thru
Atlantic Bonding Co., Inc.

NVID International, Inc / Fallen Omnibus Assignment - 6

U MALLY & ASSOCIATES                     Sep 7 2004  11:05        P.01
03/18/2004  12:23   8584569           WOLFGANG HAHN            PAGE  01/01

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

IN THE MATTER OF:

| PURE BIOSCIENCE, f/n/a Innovative Medical Services, | ) | |
|---|---|---|
| Claimant, | ) | |
| | ) | |
| and | ) | No  50 T 133 00528 03 |
| | ) | |
| NVID INTERNATIONAL, INC., FALKEN INDUSTRIES, LTD , and STEVEN GORDON, | ) | |
| Respondents | ) | |

## JOINT STIPULATION

It is hereby stipulated by the parties through their respective counsel that.

1    No default judgment will be entered by arbitrator Fitzmaurice against Falken until after a court determination has been made that Falken is properly a party to this arbitration and that the arbitrator has jurisdiction over Falken in connection with Pure Bioscience's claims here.

2    A condition of this stipulation is that it does not constitute a waiver of Falken's position that it is not properly before the arbitrator and has not consented to arbitrate these matters

3.    Falken Industries, Ltd. will cause the action it filed in the United States District Court for the Southern District of New York, _Falken Industries, Ltd. v. American Arbitration Association, Inc. International Centre for Dispute Resolution_, case no  04 Cv 1073 (LTS), to be voluntarily dismissed within three days of the execution of this stipulation

FALKEN INDUSTRIES, LTD                      PURE BIOSCIENCE

_Michael Rovell_                            _Wolfgang Hahn_

Michael J. Rovell                           Wolfgang F. Hahn
Law Offices of Michael J. Rovell Chtd.      Wolfgang F Hahn & Associates
20 N. Clark Street, Suite 2450              7160 Caminito Pepino
Chicago, Illinois 60602                     La Jolla, CA 92037
tel: (312) 578-9191, fax. (312) 578-9391    tel: (858) 535-1000, fax (858) 456-5080

Dated  March 18, 2004

Exhibit ___3___

# HP LaserJet *3330*



HP LASERJET 3330

Mar-18-2004   13:45

## Fax Call Report

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|-----|------|------|------|----------------|----------|-------|--------|
| 657 | 3/18/2004 | 13 42.24 | Send | 1212246/274.02 | 0 39 | 2 | OK |
| 658 | 3/18/2004 | 13 43.09 | Send | 18581565080.02 | 0.46 | 2 | Ok |
| 659 | 3/18/2004 | 13·44 11 | Send | 12126820500.02 | 0 52 | 2 | OK |
| 660 | 3/18/2004 | 13:45·09 | Send | 19146810013.02 | 0·45 | 2 | OK |

---

Law Offices of Michael J. Rovell Chtd

20 North Clark Street
Suite 2450
Chicago, IL 60602
312 475·0101
312 475·0201 Fax

Lines Bar
Michael J. Rovell

Of Counsel:
Alexis Hibbard Masters

Affiliated Offices
Oklahoma City
San Juan
Brussels
London
Paris

### Facsimile Cover Sheet

| | | | |
|---|---|---|---|
| **DATE:** | March 18, 2004 | **TIME:** 1:45 pm CST | **Account Code:** D2 |
| **TO.** | Agnieszka Kuzmianka | **FAX. (212) 246-7274** | |
| **CC.** | Wolfgang Hahn | **FAX. (858) 456-5080** | |
| **CC.** | Daniel Elgerman | **FAX. (212) 682-0600** | |
| **CC** | Theodore Hecht | **FAX (914) 881-0013** | |
| **FROM.** | Michael Rovell | | |
| **RE:** | Pure Bioscience v. NVID International et al No. 30 T 133 00426 03 | | |

**Number of Pages Sent (inc. Cover Sheet)**   2

**MESSAGE:**

*IMPORTANT:* This message is intended only for the use of the individual or entity to whom it is addressed and may contain information that is privileged confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone to arrange for its destruction or return. Thank you

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

FALKEN INDUSTRIES, LTD,        )
                               )
          Plaintiff,           )
                               )
     v.                        )   No. 04 CV 1073 (LT)
                               )
AMERICAN ARBITRATION ASSOCIATION, )
INC. INTERNATIONAL CENTRE FOR  )
DISPUTE RESOLUTION and PURE    )
BIOSCIENCE, f/n/a Innovative Medical )
Services,                      )
                               )
          Defendants.          )

### NOTICE OF VOLUNTARY DISMISSAL

Plaintiff Falken Industries, Ltd., by its attorneys, hereby voluntarily dismisses

this action under Fed. R. Civ. P. 41(a)(i) without prejudice.

FALKEN INDUSTRIES, LTD.

By _____
    Daniel A. Eigerman (DE2265)

Dated: March 23, 2004

Daniel Eigerman (DE2265)
100 Park Avenue, 33rd Floor
New York, NY 10017
tel: 212-983-0959; fax: 212-682-0500

Of Counsel
Michael J. Rovell
Lisa I. Fair
LAW OFFICES OF MICHAEL J. ROVELL CHTD
20 N. Clark Street, Suite 2460
Chicago, Illinois 60602
tel: (312) 578-8191
fax: (312) 578-9391

SO ORDERED.

_____ 3/29/04
LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE

Exhibit 4

TOTAL P.02

## COVENANT TO STAND SEIZED

OF RIGHTS TO THE REVENUE STREAM AND OTHER BENEFITS ARISING OUT OF ANY CLAIMS. CONTRACT, ACCOUNT, RIGHTS, EXPECTANCY, MONIES DUE OR TO BECOME DUE, OPTION (S). INVENTION. PATENT (S). CLAIMS FOR PAST INFRINGEMENT, LICENSES, TRADEMARKS RELATING TO AXENOHL AND AXEN AND ALL DERIVATIVES THEREOF

BY AND BETWEEN.

NVID INTERNATIONAL INC. A Delaware corporation having its principal place of business at 11838 Ironwing Blvd. Suite 307 Pmb 149 West Palm Beach, FL 33412 hereinafter known as "NVID" and

FALKEN INDUSTRIES LTD. A New Jersey Corporation having its principal and only place of business at 146 rue du Château, 75014 PARIS FRANCE, hereinafter known as FALKEN.

## DEFINITIONS

The Axenohl Patent: Axenohl and its diluted form, "Axen", a silver ion product with marketable disinfectant properties. invented by Andrew B. Arata, which invention was assigned to NVID International Inc (NVID) and which is the subject of a U.S. Patent N° 6,197,814; WIPO App N° WO 99/18790, together with all trade secrets as defined in California Civil Code section 3426.1 and the case law interpreting such section, un-patented inventions, all patents pending, filed, or granted in the United States and in all other countries, know-how and other rights, related to Axenohl and all rights and incidents of ownership of NVID related thereto, including, but not limited to the issued and / or applied for patents listed on Attachment "A" to Exhibit "A" of "The Core Settlement Agreement", as defined herein below.

Exhibit  5

1

2          *The Core Settlement Agreement:* That agreement dated as of November 15,

3    2001 by and among Innovative Medical Services Inc, a California Corporation, ETIH2O

4    Corporation, a Nevada Corporation, NVID International Inc, a Delaware Corporation,

5    Watertronics Ltd, an entity organized under the laws of the United Kingdom, Aqua Bio

6    Technologies S A. de C.V., a Mexican Corporation, Andrew B  Arata, Sistecam S.A. a

7    Costa Rican Corporation, David Larson, Aqua Bio Technologies Inc; a Delaware

8    Corporation, Michael Redden, Steve Gordon, George L. Duren and Dr Charles Lewis, a

9    copy of which is annexed hereto as Exhibit `A`.

10

11         *The Omnibus Assignment:* That general assignment dated September 12, 2003

12   by which NVID assigned to FALKEN any and all rights it had arising out of the Axenohl

13   patent or derivative thereof, any agreement, income stream, possessory or intellectual

14   benefits or ownership, contract and other claims, past, present and future related

15   thereto, a copy of which is annexed hereto as Exhibit `B`.

16

17         *The Core Settlement litigation:* That arbitration proceeding now pending in San

18   Diego, under the auspices of the American Arbitration Association, as and between

19   INNOVATIVE MEDICAL SERVICES (IMS) as Plaintiff and NVID INTERNATIONAL INC.

20   Steven Gordon, and FALKEN INDUSTRIES LTD as Defendants.

21

22

23

24

25

1

## PREAMBLE

2

3       WHEREAS, NVID executed in favor of FALKEN a certain Omnibus Assignment

4   dated September 12, 2003 ; and

5       WHEREAS, IMS upon learning of the said Omnibus Assignment, has initiated the

6   Core Settlement Litigation, wherein it asserts claim(s) which NVID denies ,

7       WHEREAS, IMS claims that their indebtedness under the Core Settlement

8   Agreement can be limited to 5% of the transfer fee ,

9       WHEREAS FALKEN bargained for minimum royalty payments of 1 million dollars

10  per year, beginning in 2004 for certain residuary rights .

11      WHEREAS the royalty payments were a material part of the agreement between

12  NVID and FALKEN and :

13      WHEREAS, FALKEN has already issued 460,000 shares of its common stock

14  and warrants related thereto which cannot be reclaimed ,

15      WHEREAS, NVID has agreed to aggressively defend the Core Settlement

16  Litigation, and to formulate and prosecute a counter-claim for rescission and in the

17  alternative reformation, such that the Core Settlement Agreement is either nullified and

18  the Axenohl patent reverted to NVID, or in the case of reformation such that IMS would

19  be obligated to the payment of past accrued royalties and in the event of any sale, a

20  further payment of 5%, and a continuing obligation for the purchaser to make payment of

21  all future royalties, including the minimum thereof as set forth in the Core Settlement

22  Agreement

23      NOW THEREFORE, in consideration of the sum of $ 1,00 or more paid and

24  exchanged, receipt thereof is hereby acknowledged;

25

IT IS AGREED AS FOLLOWS

WITNESSETH

1. The Omnibus Assignment dated September 12. 2003 is hereby rescinded and of no further force or effect, and is wholly substituted and superseded by the present Agreement.

2. NVID as fiduciary admits and covenants that the following rights are held by it for the use and benefit of FALKEN, and that NVID in its capacity as a fiduciary stands seized of the said rights, in trust for FALKEN;

    i) all rights, title and interests, but in no event any obligation or liability relating thereto, to moneys due and to become due, and all claims, demands and causes of action that NVID now has, or may have, against INNOVATIVE MEDICAL SERVICES INC (NASDAQ SYMBOL 'PURE'), its officers, directors, employees, licensees and assigns from any and all sources and circumstances,

    ii) all rights, title and interests, but in no event any obligation or liability relating thereto, to moneys due and to become due, and all claims, demands and causes of action that NVID now has, or may have, in relation to a certain contract settlement agreement entitled "CORE SETTLEMENT AGREEMENT" dated as of the 15th day of November, 2001, a true copy of which is attached herein as Exhibit 'A»,

    iii) all rights, title and interests, but in no event any obligation or liability relating thereto, to moneys due and to become due, and all claims, demands and causes of action that NVID now has, or may have upon any statement of account, and / or upon the sales of goods, wares and merchandise relating to,

1    incorporating or in any manner concerning the Axenohl patent and any

2    modification, addendum, improvement, paper(s), document(s) relating

3    thereto.

4    iv) all rights, title and interests, but in no event any obligation or liability relating

5    thereto, to moneys due and to become due, in relation with any activity

6    concerning in any manner the technology outlined in the Axhenohl patent and

7    any derivative there from, and all claims, demands and causes of action that

8    NVID now has, or may have in any goods, and all moneys due there from, or

9    that may grow due, upon the claim or account or upon the sale or sales of

10   same.

11   v) all rights, title and interests, but in no event any obligation or liability relating

12   thereto, to moneys due and to become due, and all claims, demands and

13   causes of action that NVID now has, or may have in any copyright, and in all

14   renewals and extensions of the said copyright that may be secured under the

15   laws now or later in force and effect in the United States of America, or in any

16   other country or countries in relation to, directly or indirectly, the Axhenohl

17   patent and any derivative there from.

18   vi) all rights, title and interests, but in no event any obligation or liability relating

19   thereto, to moneys due and to become due, and all claims, demands and

20   causes of action that NVID now has, or may have, to any manuscript, notes,

21   journals, scientific and technical books and reflections, studies and records

22   relating to, directly or indirectly the Axenohl patent.

23   vii) all rights, title and interests, but in no event any obligation or liability relating

24   thereto, to moneys due and to become due, and all claims, demands and

25   causes of action that NVID now has, or may have, to any expectancy relating

     to, directly or indirectly, the Axenohl patent.

1   viii) all rights, title and interests, but in no event any obligation or liability relating

2   thereto, to moneys due and to become due, and all claims, demands and

3   causes of action that the undersigned now has, or may have, in any judgment

4   obtained by NVID against any party, in any jurisdiction, relating to, directly or

5   indirectly, the Axenohl patent

6   ix) all rights, title and interests, but in no event any obligation or liability relating

7   thereto, to moneys due and to become due, and all claims, demands and

8   causes of action that NVID now has, or may have, to any lien, together with

9   the debt, claim or demand for which such lien was obtained and on which the

10   same is founded, and any and all moneys due, or that may become due

11   under it in relation to, directly or indirectly, the Axnenohl patent and any

12   derivative there from

13   x)  all rights, title and interests, but in no event any obligation or liability relating

14   thereto, to moneys due and to become due, and all claims, demands and

15   causes of action that NVID now has, or may have, in any debt due NVID from

16   any party for moneys loaned, in relation to, directly or indirectly, the Axhenohl

17   patent and any derivative there from

18   xi) all rights, title and interests, but in no event any obligation or liability relating

19   thereto, to moneys due and to become due, and all claims, demands and

20   causes of action that NVID now has, or may have, in and to any option

21   agreement relating to directly or indirectly, the Axenohl patent.

22   xii) all rights, title and interests, but in no event any obligation or liability relating

23   thereto, to moneys due and to become due, and all claims, demands and

24   causes of action that NVID now has, or may have, in and to any invention set

25   forth and described in any specification, application – or intended so to be,

1    and in to and under any document relating to directly or indirectly, the Axenohl
2    patent.
3    xiii) all rights, title and interests, but in no event any obligation or liability relating
4    thereto, to moneys due and to become due, and all claims; demands and
5    causes of action that NVID now has, or may have, in and to the letters patent
6    relating to the Axenohl patent to the full end of the term for which the letters
7    patent are, or may be, granted.
8    xiv) all rights, title and interests, but in no event any obligation or liability relating
9    thereto, to moneys due and to become due, and all claims, demands and
10   causes of action that NVID now has, or may have, in and to and under the
11   Axenohl patent and their inventions, and in, to and under any reissue or
12   reissues, extension or extensions, and all interests in or under them to the
13   end of the term or terms for which the letters patent are granted or issued, or
14   may be extended, renewed or reissued. Together with all claims for damages
15   and profits by reason of past infringements of the letters patent by any
16   person, firm association or corporation, with the right to sue and collect the
17   same,
18   xv) all rights, title and interests, but in no event any obligation or liability relating
19   thereto, to moneys due and to become due, and all claims, demands and
20   causes of action that NVID now has, or may have, in and to and under any
21   license, exclusive or not to manufacture and sell the Axenohl patent, on the
22   terms, provisions and conditions of any such agreement
23   xvi) all rights, title and interests, but in no event any obligation or liability relating
24   thereto, to moneys due and to become due, and all claims, demands and
25   causes of action that NVID now has, or may have, in and to and under the

12/09/2003  10:04    5817445249                                    PAGE   09

1   trademark Axen®, together with the good will of the business symbolized by

2   the mark, and the registration of it.

3   xvii)    And generally, but without limitation thereby, all rights, title and interests,

4   but in no event any obligation or liability relating thereto, to moneys due and

5   to become due, and all claims, demands and causes of action that NVID now

6   has, or may have, in and to and under any claims, contract, account, rights,

7   expectancy, monies due or to become due from any source or theory,

8   options, inventions, patents, claims for past infringement or threat thereof,

9   licenses, trademarks, relating to the Axenohl patent, Axen, and all derivatives

10  thereof

11

12  3   That on FALKEN's written demand, NVID as fiduciary will convey all of such

13  right(s) and / or proceeds and benefits derived there from or such an amount of

14  them as NVID as fiduciary shall otherwise be instructed, without deduction or

15  reserve, to any person, firm, association or corporation specified in such demand

16  4.   That NVID as fiduciary shall have no responsibility on account of any conveyance

17  it may execute in furtherance of such instructions, except for its own acts, if any;

18  5.   That NVID covenants to save and hold FALKEN safe and harmless from

19  any and all claims and demands that may arise against FALKEN by reason

20  of its ownership of the right(s), including, without limiting the generality of

21  the foregoing, any and all attorney's and counsel fees, costs and expenses

22  that FALKEN may incur or pay by reason of any action or proceeding to

23  which FALKEN may be a party as the holder of the legal title of all of the

24  aforementioned rights.

25

8. Simultaneously with the execution hereof, the parties will sign a Memorandum of Agreement outlining the rescission of the Omnibus Assignment without more. This Memorandum is without influence over this Covenant to Stand Seized and is executed to facilitate confirmation of the rescission in the setting of on-going litigation

IN WITNESS WHEREOF, each of the foregoing parties has caused their respective signatures to be applied hereunder

In Palm Beach Gardens, Florida

This    day of           2003

NVID INTERNATIONAL INC

Steven GORDON
Chairman and Chief Executive Officer

In Paris, France
The 8th day of December, 2003

HALKEN INDUSTRIES LTD

Holic A. MADSE
Executive Vice President

U. RALLY & ASSOCIATES                          Sep  7 2004  11:56    1:45
: 2004  ) 36-H                                              NO. 7941  P 14:23
: 12 2003 15:13       HP LASERJET 3930                                p. 17

10/14/2003  13:38    9684555888        WOLFGANG HAHN                  PAGE  02/03

NEWS FROM
NVID INTERNATIONAL INC. AND FALKEN INDUSTRIES, LTD

## NVID International Inc. and Falken Industries, Ltd. Correct Previously Published Information Regarding Association with PURE Bioscience's Axenohl® Techno logy

Contact.       Steven Gordon, President, NVID International Inc. (561) 307-0571.
               Steven Gordon, President, Falken Industries, Ltd.  (561) 307-0571

WEST PALM BEACH. Fla., November 10, 2003 – NVID International Inc. (Pink Sheets: NVID), together with Falken Industries, Ltd., a private New Jersey corporation, today corrected previously published information regarding the companies' ownership of and interest in the Axenohl® technology ow ned by PURE Bioscience (NASDAQ: PURE).

In previous news releases in September and October 2003, NVID International Inc. (NVID) wrongly characterized its association with PURE Bioscience's Axenohl technology when it announced that it had sold and assigned all of its interest in the Axenohl technology and patent (Axen) on September 19, 2003 to Falken Industries Ltd. (Falken), a privately held company based in Paris, France." In fact, NVID does not own any interest in the Axenohl technology, its derivatives thereof or related patents. NVID owns only potential future royalties on sales of Axenohl or Axen product by PURE Bioscience. It is this right to potential future royalties that NVID sold and assigned to Falken on September 19, 2003..

In late 2001, NVID sold the Axenohl technology to PURE Bioscience. Under the terms of the contract, titled "Core Settlement Agreement", NVID transferred all right, title and interest in and to the Axenohl patent by executing and delivering to IMS the Assignment of Patent. In addition, NVID assigned and transferred all of NVID's right, title and interest in and to "Axenohl™," "Axen ®" and any other marks used in connection with the Patent), together with the goodwill of the business symbolized by the marks. The Core Settlement Agreement was filed on Form 8-K with the Securities and Exchange by PURE Bioscience (formerly Innovative Medical Services) on December 6, 2001.

Falken executives acknowledged that Falken is the assignee of NVID's rights under the "Core Settlement Agreement" and that Falken, like NVID, claims no ownership in the Axenohl technology, derivatives thereof or related patents and trademarks.

Steven Gordon, President of both NVID International Inc. and Falken Industries, Ltd., stated, "We regret the confusion arising as a result of prior press releases by NVID, and we sincerely apologize for misleading the shareholders of PURE Bioscience."

This information is being provided promptly to the public in satisfaction of minimum disclosure requirements for dissemination of material news.

###

Exhibit  6

# WOLFGANG F. HAHN & ASSOCIATES

Attorneys and Counselors at Law

7180 Camınılo Papıno
La Jolla, CA 92037

Telephone 858. 535 1000
Telecopier 858 452. 5080
E Mail Address ellioot1@san rr.com

2 September 2004

VIA REGULAR U.S. MAIL DELIVERY
AND FACSIMILE TRANSMISSION
312. 578 9391

VIA REGULAR U.S. MAIL DELIVERY
AND FACSIMILE TRANSMISSION
818. 832. 7889

Michael J. Rovell, Esq
LAW OFFICES OF MICHAEL J ROVELL
20 North Clark Street, Suite 2450
Chicago, Illinois 60602

Joel S. Seidel, Esq
10325 Aldea Avenue
Granada Hills, California 91344

Re:  PURE BIOSCIENCE (fka Innovative Medical Services), Claimant
     v.    NVID International, Inc., Falken Industries, Ltd., Et Al.
     Before American Arbitration Association
     [International Centre for Dispute Resolution]
     Civil Arbitration Matter, Case No. 50 T 1233 00528 03; and

     United States District Court [Southern District of California]
     Case No. 04 CV 1147 L (NLS)

Dear Messrs Rovell and Seidel:

        I have chosen to address this correspondence to both of you, because I believe that
both of you serve as counsel to FALKEN  Both Mr. Brumfield and I remain somewhat
confused by Mr. Rovell's continued "flip-flopping" to arbitrator Fitzmaurice and, indirectly, to
the court, as to whether or not you represent FALKEN, both Mr. Brumfield and I will assume,
and continue to assume, as we have in the past, that, for all intents and purposes, Mr. Rovell
continues to represent FALKEN in some capacity, remains in regular and constant contact
with FALKEN and its principals and continues to act as their counsel in all matters relating to
NVID, International, NICKEL, Ltd and Pure-Bioscience  This position is supported by his
continued involvement as clearly evidenced by the steady stream of correspondence that we
have received from him over the past several weeks

Exhibit _____7_____

In this correspondence, you will note that I have not addressed Mr. Rovell's patently ridiculous contentions as to Mr. Fitzmaurice's bias and "his pecuniary interest" They are not worthy of a response  I might point out, however, that Mr Fitzmaurice was hand selected by Mr Rovell's previous clients (the ones that have scurried and fled into the night), who selected him because they reposed great trust and confidence in his impartiality and decision-making capabilities. Moreover, Mr Rovell's currently adopted position seems to be a recent outgrowth based upon Mr Fitzmaurice's unfavorable ruling against FALKEN and his outright rejection of the position taken by Mr. Rovell and his client in this arbitration.

Be that as it may, after reviewing Mr. Rovell's correspondence dated 30 August 2004 over the past several days, Mr. Brumfield and I have had opportunity to review the overall situation with our client  We have also reviewed your client Falken Industries, Ltd 's ("FALKEN") pending dilemma

### 1.   Pending Hearing Civil Arbitration  -  20 September 2004

As you know, in his third preliminary hearing, pursuant to Rule § 20, arbitrator Fitzmaurice scheduled the following dates in our pending civil arbitration matter

| 20 August 2004 | Production of Documents and File/Service of  Arbitration Witness List |
| 15 September 2004 | File/Service Arbitration Brief |
| 20 September  2004 | Commencement Of Arbitration Hearing |

Contrary to Mr. Rovell's assertions, in compliance with the Stipulation of the parties, we are not proceeding by way of "default", but instead proceeding by way of a contested arbitration hearing – a hearing in which FALKEN remains entitled to attend and fully participate.

### 2.   Pending Hearing On PURE-BIO's Motion to Compel  - 18 October 2004

As you are both well aware, Federal District Court Judge M. James Lorentz has scheduled Pure-Bio's Motion to Compel for 18 October 2004  -  approximately four (4) weeks AFTER the arbitration hearing.

Based on the current scheduling, it is clear that the arbitration before arbitrator Fitzmaurice will be completed several weeks prior to Judge Lorentz's ruling on Pure-Bio's Motion to Compel This dilemma is clearly one of FALKEN's own making and could have been readily avoided had FALKEN acted responsibly and filed its opposition papers in the normal course for the 26 July 2004 hearing – the date previously set by the Court for Pure-Bio's Motion to Compel

Accordingly, if Judge Lorentz rules in Pure-Bio's favor on 20 October 2004 and arbitrator Fitzmaurice awards relief to Pure-Bio at the arbitration hearing as and against both NVID, International and FALKEN, FALKEN will find itself in the unenviable position of being faced with an unfavorable award against it

MICHAEL J ROVELL, ESQ./ JOEL S SEIDEL. ESQ.
2 SEPTEMBER 2004
PAGE 2

3.      If FALKEN Does Not Intend To Participate In the Presently Scheduled
        Arbitration Hearing, FALKEN Should Seek A Court Order Enjoining The
        Arbitrator From Proceeding.

As previously pointed out, we have reviewed Mr. Rovell's recent 30 August 2004
correspondence to AAA's Mr. John Ellis and his arguments that he makes for the abeyance
of the arbitration hearing. Unfortunately, in reaching his conclusions, he seems to ignore key
elements of the *Toyota* court's reasoning in arriving at his adopted conclusions

In the *Toyota* case, the court flatly pointed out that ". <u>(i)f the parties did cooperate
in selecting an arbitrator as specified by the agreement</u>, and the defaulting party had
adequate notice of the hearing, the failure to attend does not nullify the award. *Sam Kane
Packing Co. v. Amalgamated Meat Cutters* (5th Cir.) 477 F 2d 1128, 1135-36, *cert. denied,
414 U.S. 1001, 94 S Ct. 355 (1973); Elkouri & E. Elkouri, How Arbitration Works* 247 (4th ed.
1985) @ 247-48. ("we would be faced with a strong case for the award"), American
Arbitration Association Voluntary Labor Arbitration Rule 27, 3 Lab Rel.Rep. (BNA) (88
Lab.Arb.) 3 (June 17, 1987) ("Unless the law provides to the contrary, the arbitration may
proceed in the absence of any party, who, after due notice, fails to be present or fails to
obtain an adjournment."). (emp add) Toyota of Berkeley v. Automobile Salesman's Union (9[th]
Cir. 1987) 834 F 2d 751, 755*

Moreover, based upon our review, we firmly believe, that Mr. Rovell has misread the
*Toyota* case, as the *Toyota* court emphatically stated that *"the burden of going into court
should rest on the party contesting the right to arbitrate under the contract."
Amalgamated Meat Cutters No. 385 v. Penobscot Poultry Co., 200 F.Supp. 879, 882-83
(N.D Mo.1961) (listing authority that party seeking arbitration must get court order only when
agreement provides arbitration may not proceed without one) Toyota, supra, @ 755* No
such language is contained in the Core Settlement Agreement

Therefore, contrary to Mr. Rovell's assertions in his correspondence, <u>based on
existing law</u>, if FALKEN wishes to postpone or continue the arbitration hearing, <u>it is
FALKEN's burden</u> – not Pure-Bio's · to make application to the Federal District Court if it
desires a temporary restraining order, prohibiting the arbitration from going forward
Naturally, you can expect our vigorous opposition to any such application, given FALKEN's
long history of delay and dilatory tactics

In summary, the burden is upon you and your clients; you can not wait until after the
hearing (like FALKEN did in Pure-Bio's Motion to Compel) and then come forward to
complain about the result – a result in which you could have actively participated, but chose
not to

4.      Grievous And Dire Consequences Could Result From FALKEN's Failure
        To Seek Injunctive Relief And Failure To Attend And Participate In The
        Arbitration Hearing If Judge Lorentz's Rules In Pure-Bio's Favor On 18
        October 2004.

While I know that you take a different position, both Mr. Brumfield and I remain firmly
convinced that Judge Lorentz will agree with arbitrator Filzmaurice and find in our favor on
18 October 2004. Assuming, arguendo, that Judge Lorentz upholds arbitrator Fitzmaurice's

ruling, FALKEN should explore the consequences it would face if, placing all of its eggs in one basket, so to speak, it has taken no other protective action.

In the meantime, in the event of a favorable arbitration ruling from arbitrator Fitzmaurice against FALKEN on 20 September 2004, we would then be filing a petition to reduce arbitrator Fitzmaurice's ruling into a judgment, again before Judge Lorentz. Given the rather limited grounds for reversal and assuming a favorable ruling by Judge Lorentz on Pure-Bio's Motion to Compel, it is unlikely that Judge Lorentz would take a different position in ruling on Pure-Bio's subsequent petition seeking to reduce the award to a judgment. Accordingly, under these set of circumstances, it is highly likely that Judge Lorentz would grant Pure-Bio's request and enter judgment against FALKEN in Pure-Bio's favor.

If that is the case, FALKEN will be left with the limited recourse of appeal from the judgment. Such an appeal, if brought, will be reviewed by the appellate court only for clear error. *Genesco, Inc v T Kakiuchi & Co. (2d Cir.1987) 815 F.2d 840, 845 (stating that the district's court's determination that there was an arbitration agreement is a factual finding and citing Fed.R.Civ.P. 52(a), which enunciates the "clear error" standard of review for factual findings, though legal rulings concerning which entities are bound are reviewed de novo).* As experienced counsel, you both know the low success rate or likelihood of reversal based upon pure error. Not very likely, is it?

### 6.    PURE-BIO's Offer To Participate In Pending Arbitration Hearing Without Prejudice To Judge Lorentz's Ruling

Given FALKEN's long history of delay, the arbitrator has shown no willingness to continue the currently scheduled arbitration hearing and I am unaware of any recent attempt made either by you or your client, requesting Mr. Fitzmaurice to do so. In light thereof, I would strongly urge you and FALKEN to reconsider your position in willfully choosing not to attend the pending arbitration before arbitrator Fitzmaurice.

To induce your reconsideration of this issue and in an effort to reduce both of our clients' legal expenses and costs, I have been authorized by my client to make the following conciliatory offer

> Pure-Bio is willing to permit FALKEN to fully participate in the arbitration hearing on 20 September 2004 without prejudicing FALKEN's maintenance of its position before the Court and Judge Lorentz that it is not bound by the terms of the Core Settlement Agreement and is not a proper party to the arbitration

In this manner, if arbitrator Fitzmaurice rules in FALKEN's favor on the merits at the 20 September 2004 arbitration hearing, the matter will be resolved and Judge Lorentz's pending ruling will be mooted as to FALKEN. On the other hand, if arbitrator Fitzmaurice rules against FALKEN on the merits, FALKEN would have a "second bite" at the apple and could still be saved by a favorable ruling from Judge Lorentz. Our proposal provides FALKEN with the best of both worlds.

MICHAEL J. ROVELL, ESQ. / JOEL S. SEIDEL, ESQ.
2 SEPTEMBER 2004
PAGE 4

This proposal makes a great deal of business sense. It addresses the array of risks currently faced by your client and minimizes the legal expense to both of our clients. I would strongly recommend you and your clients to embrace it. As time is short please advise us forthwith.

Very truly yours,

WOLFGANG F. HAHN & ASSOCIATES

Wolfgang F. Hahn
WFH.blh


cc:    Mr. John Ellis, AAA (by FAX  212. 246. 7274)

MICHAEL J ROVELL, ESQ./ JOEL S SEIDEL ESQ.
2 SEPTEMBER 2004
PAGE 5

20 North Clark Street
Suite 2450
Chicago, IL 60602
312-578-9191
312-578-9381 Fax

Lisa I. Fair
Michael J. Rovell**

Of Counsel
Alexis Maitland Hudson***

Affiliated Offices
Oklahoma City
San Juan
Brussels
London
Paris

* Licensed in Illinois
** Licensed in Illinois & Puerto
   Rico District Court
*** Licensed in the U.K.,
    Ireland and France

# Law Offices of **Michael J. Rovell** Chtd

September 3, 2004

**By Fax (858) 456-5080**
Wolfgang F. Hahn
Wolfgang F. Hahn & Associates
7160 Caminito Pepino
La Jolla, CA 92037

    Re:   Pure Bioscience v. NVID International, et al., No. 50 T 133 00528 03

Dear Mr. Hahn:

        We decline your offer to proceed with the arbitration while reserving the jurisdiction objection as it is extremely expensive to prepare for and attend an arbitration proceeding only later to learn that there was no jurisdiction and all the time and money was spent for no reason. The law is clear that the arbitrator cannot proceed under these circumstances given the stipulation that the parties entered in settlement of the New York litigation. Nor can you proceed in light of the stipulation. Your suggestion that an award will not be based on a default, but rather a "contested arbitration hearing," when no one will be present to contest is absurd. Similarly absurd is your suggestion that Falken is obligated to apply for an injunction as Falken did apply for an injunction and that action was dismissed pursuant to a stipulation providing that Pure Bioscience would move to compel arbitration and no default award would be entered in Falken's absence unless and until a proper court order compelling it to arbitrate was obtained. It is therefore not Falken that proceeds at its peril by abstaining from joining the arbitration, but rather Pure Bioscience that proceeds at its peril to hearing in Falken's absence.

        Very truly yours,

*Michel Rovell*

Michael J. Rovell

cc:    Charles Brumfield (619) 596-8700
        Joel Seidel (818) 832-7889
        John Ellis (212) 246-7274

Exhibit _3_

# HP LaserJet *3330*



HP LASERJET 3330

Sep-3-2004   11:38AM

| | Fax Call Report |
|---|---|

| Job | Date | Time | Type | Identification | Duration | Pages | Result |
|---|---|---|---|---|---|---|---|
| 368 | 9/ 3/2004 | 11:32:09AM | Send | 18584565080.02 | .1:10 | 2 | OK |
| 370 | 9/ 3/2004 | 11:35:20AM | Send | 16195968700.02 | 0:43 | 2 | OK |
| 371 | 9/ 3/2004 | 11:36:08AM | Send | 12122467274.02 | 0:46 | 2 | OK |
| 372 | 9/ 3/2004 | 11:37:00AM | Send | 18188327889.02 | 1:16 | 2 | OK |

20 North Clark Street
Suite 3400
Chicago, IL 60602
312-578-0181
312-578-9361 Fax

Affiliate Offices
Oklahoma City
San Juan
Brussels
London
Paris

## Law Offices of Michael J. Rovell Chtd

### Facsimile Cover Sheet

| DATE | September 3, 2004 | TIME: 11:10 am CST | Account Code:  02 |
|---|---|---|---|
| CC | Wolfgang Hahn | FAX:  (858) 456-5080 | |
| CC: | Charles Brumfield | FAX:  (619) 596-8700 | |
| CC | John Effs | FAX:  (212) 246-7274 | |
| CC: | Joal Seidel | FAX:  (818) 832-7889 | |

FROM    Michael Rovell

RE:    Pure Bioscience v. NVID International, et al., No. 80 T 133 00528 03

Number of Pages Sent (Inc. Cover Sheet):  3

MESSAGE:

*IMPORTANT: This message is intended only for the use of the individual or entity to whom it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone to arrange for its destruction or return. Thank you.*

JUN. 18. 2004 12:29PM 2392292829                    FDAS                 NO 5328   P. 3/3    82

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTER FOR DISPUTE RESOLUTION

IN THE MATTER OF:

| | | |
|---|---|---|
| PURE BIOSCIENCE fka | ) | PRELIMINARY HEARING ORDER |
| INNOVATIVE MEDICAL | ) | No. THREE |
| SERVICES | ) | RULE R-20 |
| and | ) | |
| NVID INTERNATIONAL, INC. | ) | |
| FALKEN INDUSTRIES, LTD, | ) | |

Having conducted a preliminary hearing pursuant to Rule R-20 of the Commercial Arbitration Rules on June 17, 2004, Charles Brumfield, Esq. and Wolfgang Hahn, Esq. appeared on behalf of claimant Pure Bioscience fka Innovative Medical Services, Inc. (hereinafter "Pure"). Respondents NVID International, Inc. (hereinafter "NVID") and Falken Industries, Ltd. (hereinafter "Falken") did not appear. However, Michael J. Rovell, Esq. participated as a matter of courtesy solely for the purpose of advising the arbitrator that (1) his representation of NVID has been terminated and (2) that Falken, LTD. continues to maintain the position that Falken is not a party to this proceeding. Accordingly, Mr. Rovell did not enter an appearance on behalf of Falken. Discussion followed and:

IT IS HEREBY ORDERED:

1. That the evidentiary proceeding presently scheduled for June 21, 2004 is cancelled subject to being reset at a future date.

2. That Pure shall file and serve its (1) motion to amend claim and (2) motion to compel discovery on or before July 6, 2004. NVID and/or Falken shall file and serve their responsive pleadings on or before July 16, 2004.

3. That a further telephone preliminary hearing shall be held on August 4, 2004 at 5:30 a.m.

Dated: June 17, 2004          By: _____
                                  JACK F. FITZMAURICE, ESQ.
                                  Arbitrator

W:\band\1 27]\NA\Preliminary Hearing Order Rule 16(1)-June17.doc

Exhibit 9